[L. A. No. 2624. Department One.—June 29, 1911.]

WARREN W. CLARK et al., Plaintiffs, and NORMAN W. CLARK, JOHN G. SANBORN, and MINNIE CHANT, Plaintiffs and Appellants, v. ROBERT BEYRLE et al., Respondents.

MECHANICS' LIENS—TUNNEL CONSTRUCTED BY MUNICIPALITY — LABOR CLAIMANTS—EQUITABLE GARNISHMENT OF CONTRACT PRICE.—No mechanics' liens can be asserted against a tunnel being constructed by a municipality as a public improvement, and the only remedy of labor claimants under the Mechanics' Lien Law is to intercept, by the method of equitable garnishment provided by section 1184 of the Code of Civil Procedure, the money due or to become due the contractor.

ID.—NOTICE TO WITHHOLD CONTRACT PRICE—BALANCE DUE ON DIFFERENT CONTRACT.—The right afforded by that section to laborers or materialmen to intercept the contract price by notices to the owner to withhold, does not carry with it the right to compel the application of what is due under one contract to the payment of demands which accrued in the performance of other contracts.

ID.—SEVERAL CONTRACTS FOR SINGLE IMPROVEMENT—RIGHTS OF LABORERS AND MATERIALMEN—SAME PERSON AS CONTRACTOR.—Nine contracts separate in form entered into by a municipality for the construction of nine successive portions or sections of a tunnel, after competitive bidding for each portion, will not, for the protection of the rights of materialmen and laborers, be treated as constituting one indivisible contract for the doing of the entire work described in the nine papers, merely because the nine sections of the tunnel were

successive portions of a single and entire improvement, and the various contracts were all entered into between the same parties.

ID.—CONTRACTOR NOT LIABLE FOR WAGES OF COOK FOR LABORERS OF SUB-CONTRACTOR.—The original contractor for the construction of such tunnel is not liable to pay the wages of a cook engaged in preparing meals for laborers working under a subcontractor, by reason of a clause in his contract with the city by which he undertook to protect it from "all claims and liens of any kind whatsoever connected with said work."

APPEAL from a judgment of the Superior Court of Santa Barbara County.  S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellants.

B. F. Thomas, for Respondents Beyrle and Metcalf.

W. P. Butcher, for Respondent City of Santa Barbara.

Chickering & Gregory, and Louis H. Roseberry, for Respondent Title Guaranty and Surety Company.

SLOSS, J.—The controversy in this action is over the right of the plaintiffs to receive payment of certain demands out of moneys due from the city of Santa Barbara to Robert Beyrle for work done in the construction of a tunnel.

The city of Santa Barbara undertook to construct a water conduit tunnel running in a northerly and southerly direction through the Santa Ynez Mountains for a length of some nineteen thousand feet.  Contracts for the construction of the northerly 8,560 feet of the tunnel were entered into between the said city and Beyrle.  For the purpose of doing the work this part of the tunnel was divided into nine sections numbered respectively 20, 19, 18, 17, 16, 15, 14, 13, and 12.  Section 20 was the first section from the northerly mouth of the tunnel and the others ran successively southerly in the inverse order of their numbers.  Section 20 was five hundred and sixty feet in length and each of the other sections one thousand feet.  The respective contracts were similar in form, specific prices being agreed upon for each cubic yard of excavation and for each thousand feet of timbering, while

the rate for hauling excavated matter out of the tunnel increased with the distance from the mouth in hundred feet lengths.

The complaint sets forth the making of a single contract and alleges that it was put in the form of nine several and separate agreements. It alleges further that Beyrle entered upon the performance of the contract and after completing section 20 made an agreement with T. A. McCullough whereby the latter was to complete the work as subcontractor. The plaintiffs Clark and Little became associated with McCullough in the work and ultimately succeeded to all of his interest under his contract with Beyrle. Said Clark and Little continued to perform the contract between Beyrle and the city of Santa Barbara until February 13, 1908, when by reason of the alleged failure of Beyrle to keep certain terms of the contract between himself and McCullough said Clark and Little were compelled to abandon the work. Thereupon Beyrle re-entered upon the performance of the contract between himself and the city of Santa Barbara and from February 13, 1908, to June 10, 1908, employed Warren W. Clark to superintend such performance. It is alleged that while the work of construction was being carried on by the firm of Clark and Little the plaintiff Norman W. Clark performed labor for said Clark and Little upon said tunnel and that a balance of $1,395.50 remains unpaid to him on account of said work; that during the same time the plaintiff John G. Sanborn performed work for Clark and Little upon said tunnel and that a balance of $757.17 remains due to him; that during the same period Minnie Chant performed labor on said tunnel "as cook for the laborers and others engaged in the construction thereof" and that a balance of $780.04 remains due to her.

On July 2, 1908, each of the claimants gave to the defendant city of Santa Barbara written notice that they had respectively performed said labor and notified the city to withhold from the defendant Beyrle sufficient money then due or to become due to him to answer the respective claims of said plaintiffs. The complaint alleges that there is due from the city for the unpaid portions of the completed work upon said tunnel the sum of $3,977.91, which the city is holding pursuant to said notices. Judgment is asked for

the sums alleged to be due to the respective plaintiffs. The plaintiffs also seek to hold the defendant The Title Guaranty and Trust Company, which, as surety, signed a bond attached to the contract, and guaranteeing faithful performance by Beyrle.

The answers of the defendants contained a number of denials which need not be here detailed. Upon the issues so made the court made its decision. With reference to the contracts, the court found that nine separate agreements were made between the city of Santa Barbara and Beyrle for the construction of nine successive portions or sections of the tunnel, the terms of such agreements being as hereinbefore stated. It is found that the agreements were so severally executed for the purpose of enabling Beyrle to receive payments in full for the successive portions of said construction. The agreement with McCullough and the transfer of McCullough's rights to Clark and Little are found as alleged in the complaint. It is found that sections 20, 19, 18, and 17 of the proposed tunnel were completed and accepted by the city on January 5, 1905, November 23, 1905, February 25, 1907, and December 27, 1907, respectively, and all balances due to Beyrle from the city under the agreements providing for the construction of said sections were respectively paid to Beyrle by the city thirty-six days after the respective dates of completion and acceptance of the sections, and the defendant Title Guaranty and Trust Company was discharged by the city from all liability on account of said agreements. Between January 31, 1906, and February 13, 1908, the plaintiff Norman W. Clark performed labor upon the tunnel at the request of Clark and Little and a balance of $1,395.50 remains due and unpaid to him. It is further found, however, that only $152.90 of this amount accrued after the twenty-seventh day of December, 1907, (i. e., the date of the completion of section 17 of the tunnel) and the last-named amount is all that accrued for labor performed on section 16. There are similar findings with respect to the plaintiff John C. Sanborn that a balance of $757.17 is due, but only $129.25 of this amount is due for labor performed in the construction of section 16. Likewise, the court finds that Minnie Chant performed labor as alleged, but finds that only $76.45 of her claim accrued while the firm of Clark and Little was engaged

in the construction of section 16. The court finds, further, that there is due from the city of Santa Barbara the sum of $3,977.91 on account of the construction of section 16 of the tunnel and that the said city is holding this sum to abide the event of this action. The conclusions of law are to the effect that none of the plaintiffs is entitled to any judgment for labor performed on the tunnel prior to the completion of section 17 and that plaintiffs Norman W. Clark and Sanborn are entitled to judgments that the city of Santa Barbara pay them the amounts found to be due for labor performed on section 16,—that is to say, $152.90 to the plaintiff Norman W. Clark and $129.25 to the plaintiff John G. Sanborn. As regards the plaintiff Minnie Chant the conclusion is that she is not entitled to any judgment.

There were also findings and conclusions of law in favor of a claim of Warren W. Clark, but as the disposition of this claim is not disputed we shall make no further reference to it.

On the foregoing findings and conclusions of law judgment was entered that the city of Santa Barbara pay plaintiffs Norman W. Clark and John G. Sanborn the amounts found to be due to them as aforesaid and that the plaintiff Minnie Chant take nothing by this action. There is a further declaration in the judgment that plaintiffs Norman W. Clark and John G. Sanborn "take nothing by this action except as hereinbefore adjudged."

The present appeal is taken by Norman W. Clark, John G. Sanborn, and Minnie Chant from those parts of the judgment which adjudge that said plaintiffs Clark and Sanborn take nothing by this action except as in said judgment adjudged, and that said plaintiff Minnie Chant take nothing.

A preliminary motion to dismiss the appeals of Clark and Sanborn is made by the respondents. It is shown that on the tenth day of January, 1910, the day before the notice of appeal was filed, these plaintiffs accepted payment of the sums allowed by the judgment and acknowledged satisfaction of that part of the judgment which adjudged that the city of Santa Barbara pay them those sums. It is urged by the respondents that by receiving and accepting the amounts granted by the judgment and causing satisfaction to be entered these appellants waived their right of appeal from the judgment. There is a good deal of force in the argument of

respondents that the judgment in question is not divisible in such manner as to permit a party to accept what it gives him and still appeal. Inasmuch, however, as we are satisfied that the judgment should be affirmed on the merits we prefer to so dispose of it rather than to have the case go off upon technical considerations affecting the right to maintain the appeal.

The appeals are presented on the judgment-roll alone. No question of error in admitting or rejecting evidence, or of the sufficiency of the evidence to support the findings, is, therefore, raised. The only point made by the appellants is that, on the facts found, a different judgment should have been entered.

1. The claims of Norman W. Clark and John G. Sanborn.

These appellants performed labor on sections 19, 18, 17, and 16. The money remaining in the possession of the city when Clark and Sanborn served their notice to withhold, and when the action was commenced, was due under the contract for the construction of section 16. All moneys payable for the construction of sections 20, 19, 18, and 17 had already been paid in accordance with the terms of the contracts covering those sections. The judgment allows to the claimants, out of the money on hand, payment for the work done by them on section 16, and denies recovery for so much of their claims as represents work done on other sections.

The claim of the plaintiffs rests upon an equitable garnishment pursuant to section 1184 of the Code of Civil Procedure, of the fund owing by the city to Beyrle, the contractor. Inasmuch as the tunnel was a public improvement of the municipality, no liens could be asserted against it (*Bates* v. *Santa Barbara,* 90 Cal. 543, [27 Pac. 438]) and the only remedy of the claimants under the Mechanics' Lien Law was to intercept, by the method here pursued, the money due or to become due the contractor. The theory upon which the right to so intercept the contract price rests is analogous to that underlying the entire scheme of mechanics' liens, viz., that the laborers and materialmen who have added value to the property should be protected by making the property liable to them for the increased value which they have created. With respect to the remedy by notices to withhold, it was, no doubt, thought by the legislature that those who had, by fur-

nishing labor or materials, enabled the contractor to complete the construction and earn the contract price, should, in justice, be entitled to enforce payment of their demands out of any balance of such contract price properly due. But this does not carry with it the right to compel the application of what is due under one contract to the payment of demands which accrued in the performance of other contracts. The very purpose of the provision of section 1184, permitting the service of notices upon the owner, is to give to persons who have assisted in the performance of a contract a right to receive payment out of the money to be paid for the performance of that contract. If, then, the contracts for the construction of the nine sections comprising the northerly half of the tunnel were separate and distinct in law and in fact, as they were in form, the judgment of the lower court was clearly right. The only contract price remaining unpaid at the time the notices were served was that which would become due on section 16. This amount was applicable to the payment of claims incurred in the construction of section 16, and no further. Sections 19, 18, and 17 had already been completed and paid for. If the claimants ever had the right to receive a part of the contract price payable for any of these sections, they should have asserted their right by giving notice before the city had paid the contractor.

Recognizing the force of these considerations, the appellants are driven to the contention that the nine contracts are, for the purposes of this case, to be treated as a single agreement for the construction of 8,560 feet of the tunnel. The complaint, as has been said, sets forth such single contract. But issue was joined as to this, and the court found that the city of Santa Barbara and Beyrle made and entered into nine separate signed agreements providing respectively for the construction of nine successive portions or sections of a tunnel. Notwithstanding this finding, which on the present appeal, is not attacked, the appellants argue that, because the nine sections of the tunnel were successive portions of a single and entire improvement, and because the various contracts were all entered into between the same parties, they must, for the protection of the rights of materialmen and laborers, be treated as constituting one indivisible contract for the doing of the entire work described in the nine papers.

We are cited to no authority supporting this contention, and we think it cannot be maintained. It is not questioned that the city has the same right that a private owner would have to let separate contracts for the doing of different portions of a proposed work. It appears from the exhibits attached to the complaint that these contracts were let after inviting competitive bids, and that separate proposals for constructing the several sections were called for. It was quite possible that the nine contracts might have been let to nine different bidders. In such case, it certainly would not have been claimed that a claimant doing work on a section being constructed by one contractor could enforce payment out of the price due another contractor for the construction of a different section. The nine contracts would clearly have been separate and distinct. We do not see that their character is necessarily changed by the circumstances that a single bidder happened to secure all of the contracts.

It is argued that it would be a great hardship upon materialmen or laborers to permit the work to be separated so as to limit them in their right of recovery for work done upon any section to the contract price payable for that section. But each of the contracts was duly recorded, and thereby any claimant was given the opportunity to know what work was covered by the contract, and the terms and conditions of payment. There was nothing to prevent the appellants from serving notices to withhold the amount due them on the various sections before the contract price for the respective sections had been paid.

The further suggestion is made that, if the plaintiffs were entitled to mechanics' liens, their liens would extend to the entire improvement, even though there had been separate contracts for the construction, and it is urged that the right under notices to withhold should extend to any part of the contract price remaining unpaid. It is by no means clear that, in case of a private improvement, such as a tunnel, constructed under separate contracts in the manner here adopted, the liens of laborers or materialmen for labor done or materials furnished on one section would extend to the entire improvement. (See *Pacific R. M. Co.* v. *Bear Valley Irr. Co.,* 120 Cal. 94, [65 Am. St. Rep. 158, 52 Pac. 136].) But if we assume that the appellants are right on this point, their prem-

ise does not justify the conclusion. Where valid contracts are filed, the right of lienors is limited to the balance of the contract price due the contractor. (*Kellogg* v. *Howes,* 81 Cal. 175, 6 L. R. A. 588, 22 Pac. 509] ; *McDonald* v. *Hayes,* 132 Cal. 490, [64 Pac. 850] ; *Stimson Mill Co.* v. *Braun,* 136 Cal. 124, [89 Am. St. Rep. 116, 57 L. R. A. 726, 68 Pac. 481] ; *Hampton* v. *Christensen,* 148 Cal. 729, [84 Pac. 200].) The lien claimants derive their rights through the contractor. Where they have acquired a right to apply the balance due under a contract to the payment of their demands, this balance must be applied solely to the satisfaction of such demands as have arisen under the contract. Thus, if an owner erecting a house makes one contract for the brickwork and another for plastering, the lien of one working under either contract would apply to the entire structure. But, if the brickwork had been completed, and payment duly made in accordance with the contract covering that branch of the construction, a laborer in that branch who had failed to file his claim of lien or to give notice in time, could not assert a right to have his claim paid out of the price payable under the contract for plastering. This would obviously be so if the contractors were different. The rights of claimants are not changed where both contracts, if in fact separate and distinct, are held by the same contractor. Accordingly, even if this were a case of lien, the question would come back to that first discussed—i. e., whether the agreements for the construction of the various sections of the tunnel were separate, or constituted a single agreement. As we have said, this question is answered by the finding of the court.

It must be remembered that the appellants are seeking payment, out of a fund due from the city to Beyrle, of demands for which neither the city nor Beyrle is personally liable. The work was done for subcontractors, and the only liability of the owner or the original contractor is that created by the statute. The contractor is equitably, as well as legally, entitled to insist that his money shall not be paid in satisfaction of claims to which it is not applicable.

2. The claim of Minnie Chant.

This claim was for services rendered as cook for the laborers working in the construction of the tunnel. It is conceded that these services furnish no basis for relief under

the Mechanics' Lien Law. (*McCormick* v. *Los Angeles Water Co.*, 40 Cal. 185.) They do not come within the terms of section 1183 of the Code of Civil Procedure. The contention is, however, that she is entitled to recover directly against the contractor (and, incidentally, against his surety) under the clauses by which the contractor agrees to protect the city from "all claims and liens of any kind whatsoever connected with said work" and authorizes the city to withhold "money due by him to his laborers or other workmen," and further agrees "to pay to the proper parties all amounts due for . . . labor . . . employed in the performance" of the contract. It is claimed that, under section 1559 of the Civil Code, this contract may be enforced by Minnie Chant as one made expressly for her benefit.

It would require a highly strained interpretation of the contract to hold that it assumed to bind the contractor to pay the wages of a cook engaged in preparing meals for laborers. The agreement of Beyrle was to hold the city harmless against claims and liens "connected with said work." The work contemplated was the construction of a tunnel. This appellant was not engaged in any such work, and the city was not concerned in the payment or non-payment of her claim. It is not to be supposed that the contract was designed to protect the city against a claim, which could not in any way affect its interests.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank and filed the following opinion on July 31, 1911:—

BEATTY, C. J.—I have dissented from the order denying a rehearing of this cause partly for the reason that a question as to the right of Minnie Chant to recover upon the bond of Beyrle's surety, for a portion at least of her demand is left undecided, and partly for the reason that the opinion of the court goes beyond the necessities of the case in stating a doctrine which imposes what in my opinion is an unautho-

rized and unjust restriction upon the right of a garnishment in similar cases, involving public improvements, and by consequence abridges the right of lien as well as garnishment in similar cases involving private improvements.

It is stated in the opinion of the court that "the appellants are seeking payment out of a fund due from the city to Beyrle of demands for which neither the city nor Beyrle is personally liable." And this seems to be true except as to a part of the claim of Minnie Chant. So far as it is true that the appellants are seeking payment out of a fund due Beyrle for work done on section 16, of claims for work done for his subcontractors on sections 17, 18, etc., I agree with the court that their position is untenable, and this, except as to the claim of Minnie Chant, was all that was necessary to be said in affirming the judgment of the superior court. But the opinion of this court goes further and will be cited hereafter as holding that where a single improvement—as for instance a house—has been constructed by the same contractor under separate contracts for different parts of the work, and the owner in consequence of garnishments duly served has withheld a sufficient amount of the money due the contractor to pay all claims in full, the fund must nevertheless be apportioned with reference to the application of previous payments to the one contract or the other, and if the result is that the fund assigned to one contract is insufficient to pay claims arising under that contract they must go unpaid and the surplus in the fund apportioned to the other contract go to the contractor's general creditors. I find no warrant in the statute (Code Civ. Proc., sec. 1184) for this construction. The letter of the statute does not sustain it, and certainly it is opposed to the policy of the law, which being remedial in its nature demands a liberal construction in furtherance of its objects.